The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Hoag and the briefs and oral argument before the Full Commission. The appealing party has shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. The Full Commission therefore reverses the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. American Protection Insurance Company is the carrier on the risk.
4. A Form 21 was approved September 29, 1995. Temporary total disability benefits were paid from July 21, 1995 through August 11, 1997.
5. A Form 24 was approved by Administrative Decision and Order on August 11, 1997.
6. Plaintiff gave timely Notice of Appeal from the Administrative Decision and Order on August 21, 1997.
7. Assorted medical records which are contained in the Industrial Commission file were stipulated into evidence. These include the records of Dr. Lestini, Dr. Ney, Dr. Matthews and Dr. Wilkinson.
8. The issues for determination are:
a. Was the Administrative Decision and Order pursuant to N.C. Gen. Stat. 97-18.1 suspending and terminating plaintiffs benefits approved in error?
b. If the Form 24 was incorrectly approved, to what benefits is plaintiff entitled to receive?
c. Is plaintiff entitled to medical compensation for the medical treatment provided by Dr. Hallett H. Matthews, Dr. Kathryn Ney and Albemarle Mental Health Center?
***********
Based upon all of the competent evidence of record and reasonable inferences drawn therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff was born October 15, 1952. At the time of the hearing, she was 45 years old. She graduated from high school in 1971.
2. Plaintiff suffered an admittedly compensable injury on April 6, 1995. She had begun working for defendant-employer on February 2, 1995, as an assistant manager trainee. Plaintiff was moving two hot dog grills when she experienced low back pain and left leg pain.
3. The Industrial Commission approved a Form 21. Plaintiffs average weekly wage was $270.00 pursuant to the Form 21, yielding a compensation rate of $180.00. Compensation payments of $180.00 per week began on July 21, 1995, for necessary weeks. They continued through August 11, 1997, when a Special Deputy Commissioner permitted them to stop, pursuant to a Form 24 proceeding. Plaintiff appealed for a hearing de novo pursuant to N.C. Gen. Stat. 97-18.1.
4. Plaintiff was treated by Dr. Richmond in Norfolk, Virginia, at the request of defendant-carrier. Dr. Richmond told her not to lift more than five pounds and do no housework until she had a back operation. She was also referred to Dr. Byrd in Norfolk by the carrier. Dr. Byrd recommended back surgery in the event that steroidal injections failed to provide relief.
5. Plaintiff was also referred to Dr. Lestini whose practice is in Raleigh. Dr. Lestini became her treating physician. Plaintiff would visit Dr. Lestini when she experienced flare-ups. She described a flare-up as a throbbing pain in the lumbar spine area which radiates down the left leg and into the toes. Her toes tingled and burned. Dr. Lestini told her to go to bed for three to five days when she had a flare-up.
6. Plaintiff was also treated by Dr. Hallett Mathews. Ultimately, plaintiff returned to Dr. Mathews because she continued to experience back pain and Dr. Lestini apparently recommended surgery. Dr. Mathews suggested that a myelogram with a CAT scan be done in order to assess the situation.
7. Plaintiff was also treated at Albemarle Mental Health Center. She was in constant pain and was having a hard time sleeping, spending many nights in her living room.
8. Defendant-carrier provided vocational rehabilitation to plaintiff. Her rehabilitation professional was Cindy Jenkins, associated with Kemper National Services. Subsequent referral was made to Laura Yonke (Whitfield) who was a vocational consultant with Resource Opportunities.
9. Plaintiff participated in vocational rehabilitation which included preparing a resume, submitting job applications and attending job interviews. During the course of the vocational rehabilitation process between February 10, 1996, and May 16, 1997, plaintiff submitted more than 96 job applications. Some applications required her to describe any prior problems that she may have had. In response to this requirement, plaintiff identified her physical restrictions on the applications in an effort to make full disclosure to prospective employers. Yonke told her that she did not have to tell them anything about her back condition but plaintiff responded that she preferred to be honest.
10. Plaintiff received a job offer from the North Carolina Aquarium in Manteo. She worked in pain the first day of the job, a Wednesday. She had a bad experience with an angry customer which put her to tears. Her supervisor told her to go home and lie down. She spent the next day in bed on a heating pad. Still in pain, she returned on Friday, laying on the couch for a few minutes. She left work around 11:30 a.m. because she was in pain. Her employer told her not to come back; that they could not work with her.
11. After a few days, plaintiff resumed the employment application process. Yonke never called her again and the resumption of the employment application process was a solo venture. Plaintiff submitted applications to 5 different places. In fact, plaintiff located a job as a night auditor at the Comfort Inn. The work hours were 11:00 p.m. to 7:00 a.m. Plaintiff worked for approximately 2 weeks. Plaintiff continued to have the same symptoms as she pushed herself to perform the new job. On one occasion, plaintiff was getting up on a stool and experienced weakness in her left leg, causing her to fall. She was not able to keep this job longer than 2 weeks.
12. Plaintiff was having difficulty concentrating, was unable to comprehend reading, experienced back pain when standing to wash dishes, experienced numbness in her left leg and tingling and burning in her toes, was unable to sleep at night and was irritable. (T. pp. 37-39) Plaintiffs husband undertook household duties because plaintiff was no longer able to do them. Plaintiff was unable to return to her job with employer-defendant. Employer-defendant failed to offer any light-duty work or to find her suitable employment.
13. Carl H. Hanbury, a licensed professional counselor, testified as a vocational expert. Hanbury performed an initial assessment which included administering the Wide Range Achievement Test-Revision 3 (WAIS). Hanbury also reviewed the medical reports and records available as of the date of the hearing. In performing his analysis, Hanbury also used information in the Dictionary of Occupational Titles, Classification of Jobs and Occupational Outlook Handbook. Hanbury also used information from the Labor Market Information Division of the North Carolina Employment Security Commission. Hanbury was of the opinion, and the Full Commission finds as a fact, that plaintiff was not able to return to gainful employment at this time. The combination of the depression and anxiety and physical restrictions prevented a return to gainful employment
14. Dr. Kathryn Ney, a licensed medical doctor and a Board Certified Psychiatrist in Manteo, North Carolina, testified that plaintiff began treatment at the Albemarle Mental Health Center (AMHC) on June 9, 1997. Dr. Ney testified that plaintiff was also seen by Jim Southern, a clinical social worker, who is also employed by AMHC. Southern works under the supervision of Dr. Ney. Dr. Ney testified, and the Full Commission finds as a fact, that plaintiff was suffering from severe/major depression. Dr. Ney further testified, and the Full Commission finds as a fact, that the precipitating stressors were the chronic pain from the compensable injury and the constant conflict with the workers compensation "battle. The injury she sustained on the job had a major role in producing the symptoms. Dr. Ney also testified that the symptoms experienced by Debra would affect her ability to concentrate, to maintain any type of pace at work and to complete tasks in a timely manner. Chronic pain had a negative impact on her attitude. Dr. Neys prognosis for Debra was the condition was a chronic one. Dr. Ney does not believe that Debra will get any better
15. Dr. Hallet H. Mathews, a Board Certified Orthopaedic Surgeon in Richmond, Virginia, first examined plaintiff on October 30, 1995, as a second opinion physician. He examined plaintiff again in November 12, 1997. Dr. Mathews was familiar with the chronology of the medical treatment provided since the first examination of October 30, 1995. At that time, Dr. Mathews diagnosed a multi-level nerve compression syndrome resulting from the compensable injury. Subsequent to the hearing in this matter, Dr. Mathews performed a decompression surgery on February 10, 1998. This surgery was necessary to alleviate the pain that plaintiff had been experiencing for two years as a result of the compensable injury.
16. The lifting injury created a disk herniation and caused a multiple cascade of events resulting in decline of back motion and the need for surgery. Dr. Mathews testified that plaintiff will have restrictions in sitting, bending, twisting and heavy lifting. He also testified that plaintiff would not have been able to do work hardening in January, 1998, because she was not functioning at all at a sedentary level which is a minimum level desired before work hardening. Work hardening would have been counter-productive and inflammatory. Dr. Mathews also testified that he could not imagine writing a prescription for work hardening for a patient who he had not seen in four months (as did Dr. Lestini).
17. If plaintiff does not make a good recovery and instability patterns develop or she continues to have chronic pain, then she will require future surgery in the nature of a spinal fusion. Dr. Mathews testified that there is a 20-30% chance plaintiff will need additional surgery.
18. The medical treatment provided by Dr. Mathews and providers incidental thereto was reasonably designed to effect a cure or provide relief from plaintiffs condition which was caused by her compensable injury. Plaintiff sought Industrial Commission approval in her brief to the Deputy Commissioner, which was reasonable since the surgery was not performed until after the hearing. The Full Commission hereby approves that treatment.
19. The psychiatric treatment provided by Dr. Ney and the Albemarle Mental Health Center was reasonably designed to effect a cure or provide relief from plaintiffs condition which was caused by her compensable injury. The Full Commission hereby approves that treatment.
20. Plaintiffs continuing chronic pain and related symptoms were directly related to and caused by her specific traumatic incident of April 6, 1995.
21. Defendants have not provided Plaintiff employment suitable to her capacity. As a result of continuing chronic pain, Plaintiff was unable to perform the job with the North Carolina Aquarium and at the Comfort Inn.
22. As a result of her specific traumatic incident, plaintiff has been unable to earn any wages in her former employment or in any other employment.
***********
Based upon the foregoing findings, the Full Commission reaches the following additional:
 CONCLUSIONS OF LAW
1. On April 6, 1995, plaintiff sustained an injury by accident arising out of and in the course and scope of her employment as a direct result of a specific traumatic incident of the work assigned. N.C. Gen. Stat. 97-2(6).
2. The Form 21 Agreement for Compensation, approved by the Industrial Commission, created a rebuttable presumption of continuing disability in plaintiffs favor. N.C. Gen. Stat. 97-29;Watkins v. Central Motor Lines, Inc., 279 N.C. 132,181 S.E.2d 588 (1971); Radica v. Carolina Mills, 113 N.C. App. 440,439 S.E.2d 185 (1994); Franklin v. Broyhill Furniture,123 N.C. App. 200, 472 S.E.2d 382 (1996) Kisiah v. W.R. KisiahPlumbing, Inc., 124 N.C. 72, 476 S.E.2d 434 (1996); disc. review denied,345 N.C. 343, 483 S.E.2d 169 (1997).
3. Defendants have not presented evidence sufficient to rebut the presumption of continued disability raised by the approved Form 21 Agreement. Plaintiff is therefore entitled to a continuing presumption of disability.
4. Evidence that plaintiff has returned to work is not sufficient to rebut the presumption created by the Form 21 Agreement. Kisiahv. W.R. Kisiah Plumbing, Inc., supra. As the Court in Kisiah stated: "An employees release to return to work is not the equivalent of a finding that the employee is able to earn the same wage earned prior to the injury, nor does it automatically deprive an employee of the Form 21 presumption. Radica v. CarolinaMills, supra. "For instance, even if an employee returns to work at a pre-injury wage level, this evidence alone may be an unreliable basis for estimating earning capacity. Tyndall v.Walter Kiddie Co., 102 N.C. App. 726, 403 S.E.2d 548, disc. review
denied, 329 N.C. 505, 407 S.E.2d 553 (1991) (quoting 2 LarsonsWorkmens Compensation Law, Section 57.21(d) at 10-125).
5. Under the Workers Compensation Act, disability is defined by a diminished capacity to earn wages, not by physical infirmity. N.C. Gen. Stat. 97-2(9) (1991). Moreover, the fact that an employee is capable of performing employment tendered by the employer is not, as a matter of law, an indication of plaintiffs ability to earn wages. Peoples v. Cone Mills, 316 N.C. 426, 434, 342 S.E.2d 798,804 (1986).
6. In order to rebut the Form 21 presumption of continuing disability, the employer or carrier must produce evidence that (1) suitable jobs are available for the employee; (2) that the employee is capable of getting the job taking into account the employees physical and vocational limitations; and (3) that the job would enable the employee to earn some wages. Franklin v.Broyhill Furniture Industries, 123 N.C. App. 200,472 S.E.2d 382 (1996). A job is "suitable if the employee is capable of performing the job, given her age, education, physical limitations, vocational skills, and experience. Id. Once the employer has produced evidence that disputes plaintiffs disability, the plaintiff may produce evidence that either contests the availability of other jobs or her suitability for those jobs, or establishes that she has unsuccessfully sought the employment opportunities by her employer. Id.
7. The employer may also rebut the presumption by showing that the employee unjustifiably refused suitable employment. N.C. Gen. Stat. 97-32. A review of case law shows that "suitability under N.C. Gen. Stat. 97-32 is not limited to a consideration of physical suitability. In McLean v. Eaton Co., 125 N.C. App. 391,481 S.E.2d 289 (1997), the Court said the Industrial Commission must consider psychological disability as well as physical disability in determining whether a job offered to an injured employee is "suitable to his capacity under N.C. Gen. Stat. 97-32.McLean, 125 N.C. App. at 394, 481 S.E.2d at 291. N.C. Gen. Stat.97-32 provides: "If an injured employee refuses employment procured for him suitable to his capacity he shall not be entitled to any compensation at any time during the continuance of such refusal, unless in the opinion of the Industrial Commission such refusal was justified. N.C. Gen.Stat. 97-32 (1991) (emphasis added). The plain language of this statute requires that the proffered employment be suitable to the employees capacity. If not, it cannot be used to bar compensation for which an employee is otherwise entitled. See Peoples v. Cone Mills, 316 N.C. 426,444-45, 342 S.E.2d 798, 810 (1986). In fact, before the Commission determines, in general, that a plaintiff is employable and can earn wages, it must determine that he "can obtain a job taking into account his specific disabilities. Bridges v. Linn-CorriherCorp., 90 N.C. App. [**394] 397, 401, 368 S.E.2d 388, 390, disc.review. denied, 323 N.C. 171, 373 S.E.2d 104 (1988). In addition, if an employee suffers a compensable injury and the injury causes an emotional disturbance which renders him unable to work, he is entitled to compensation for total incapacity under N.C. Gen. Stat. 97-29. Fayne v. Fieldcrest Mills, Inc., 54 N.C. App. 144,146, 282 S.E.2d 539, 540 (1981), disc. review denied,304 N.C. 725, 288 S.E.2d 380 (1982).
8. Plaintiff is also entitled to medical compensation as may be reasonably required to effect a cure or give relief. N.C. Gen. Stat. 97-25. The employee must seek approval of a new physician within a reasonable time and not necessarily prior to the services or the surgery. Forrest v. Pitt County Bd. Of Educ.,100 N.C. App. 119, 394 S.E.2d 659 (1990). Schofield v. Great Atlantic Pacific Tea Co.,299 N.C. 582, 264 S.E.2d 56 (1980). Approval by the Industrial Commission may only be reversed upon a finding of a manifest abuse of discretion. Franklin v. Broyhill, supra.
9. On appeal from the decision of a Special Deputy Commissioner in a Form 24 proceeding, the employer and carrier have the burden of proof in a hearing de novo. N.C. Gen. Stat. 97-18.1, which states, in pertinent part: "A formal hearing under G.S. 97-83 ordered or requested pursuant to this section shall be a hearing de novo on the employers application for termination or suspension of compensation and may be scheduled by the Commission on a preemptive basis.
10. Plaintiff is entitled to continuing total disability payments.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall restore plaintiffs continuing total disability compensation payments of $180.00 per week, retroactive to August 11, 1997, when they were discontinued. Such payments shall continue until such time as plaintiff is able to return to work at her former wages or until further order of the Industrial Commission.
2. Payments in arrearage shall be paid in a lump sum, subject to attorneys fees as set forth below and subject to interest at the rate of 8% per year from November 27, 1997, until paid.
3. Plaintiffs attorney is entitled to 25% of the lump sum awarded above, which shall be paid directly to such attorney (excluding interest, all of which shall be paid to plaintiff). After the lump sum payments bring compensation up to date, every fourth check shall be paid directly to plaintiffs attorney.
4. Defendants shall pay medical compensation, in accordance with the Industrial Commissions Medical Fee Schedule, to all providers whose treatment was reasonably designed to effect a cure or provide relief from plaintiffs condition which was caused by her compensable injury, including the treatment provided by Dr. Mathews and related providers, and Dr. Ney and Albemarle Mental Health center. Defendants shall continue to provide medical compensation as needed in the future.
5. Defendants shall pay the costs.
This 28th day of September 1999.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER